## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO 1:06-CR-0199 |
| | : | |
| v. | : | (Chief Judge Conner) |
| | : | |
| ROGELIO LOPEZ | : | |

### MEMORANDUM

Presently before the court is defendant's *pro se* motion (Doc. 1791) to vacate,

set aside, or correct sentence pursuant to 28 U.S.C. § 2255.[1]  Defendant Rogelio

Lopez ("Lopez") asserts two counts of ineffective assistance of counsel based on:

(1) counsel's failure to argue that Lopez's detention exceeded the bounds permitted

in a Terry stop; and (2) counsel's failure to object to the racial composition of the

jury venire.  Also before the court is Lopez's motion (Doc. 1805) for the appointment

of an expert and a request for documents relating to his challenge to the racial

composition of the jury pool, and his motion (Doc. 1807) seeking a sixty (60) day

extension for filing a reply in order to examine said documents.  For the reasons

that follow, Lopez's § 2255 motion (Doc. 1791) and motion (Doc. 1805) for the

appointment of an expert and a request for documents will be denied.  Lopez's

motion (Doc. 1807) for an extension of time to file a reply will be denied as moot.

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district]
court . . . claiming . . . that the sentence was imposed in violation of the Constitution
or laws of the United States . . . may move the court which imposed the sentence to
vacate, set aside or correct the sentence.").

I.     **Factual Background**[2]

At approximately 10:45 p.m. on Monday, May 26, 2008, Chicago Police

Officers William Fasan ("Officer Fasan") and Peter Kochanny ("Officer Kochanny")

were traveling west on 40th Street toward the intersection of Pulaski Road in

Chicago.  They observed a black Pontiac Grand Am and a green minivan parked

near one another in a remote section of an empty Burger King parking lot.  Lopez's

co-defendant, Martin Lopez ("Martin"), exited from the minivan and Lopez and

another individual exited the Grand Am.  The three individuals glanced in all

directions to determine whether anyone was watching them.  They met one another

and conversed briefly but did not shake hands or otherwise extend a customary

social greeting.  The officers noticed the three individuals' hands come together as

if they had passed a small article between them.

The police officers suspected that the individuals had conducted a hand-to-

hand drug transaction.  The officers drove their police cruiser toward the three

individuals to investigate the situation.  As they approached, the suspects split up

and walked hurriedly toward the opposite vehicles from those in which they had

arrived: Martin moved toward the Grand Am while Lopez and the other individual

headed for the minivan.  The officers then noticed that the trio had exchanged car

---

[2] This section is based on the court's findings of fact from its memorandum
and order (Doc. 1048) denying Lopez's motion to suppress evidence, which in turn
is based on the testimonial and documentary evidence presented at the evidentiary
hearing held on February 6, 2009.  It only includes those facts relevant to the court's
analysis of the instant motion.

keys rather than narcotics.  This activity increased the officers' suspicion because the area has a reputation for hosting large-scale drug transactions, including car-switch transfers.

The officers initiated an investigatory stop based on their suspicion that the individuals had just conducted a car-switch drug transaction.  At the request of the officers, Martin produced an Illinois driver's license that did not match the minivan's registration, which bore his name but was titled in Michigan.  The lack of parity between Martin's license and registration further piqued Officer Fasan's suspicion because individuals who relocated to Illinois must transfer their vehicle registration within thirty days.  When Officer Fasan asked Martin to explain the discrepancy between his license and registration, Martin provided no response.

After conducting a preliminary pat-down search of the suspects' outer clothing, the officers questioned the individuals about the car switch.  Lopez stated that he was borrowing the minivan from Martin to take his family on vacation.  This explanation struck the officers as disingenuous because the car swap occurred late at night in a commercial parking lot at the end of the Memorial Day weekend.  In the officers' experience, vacationers who borrow automobiles typically exchange the vehicles at home during daylight hours in advance of a holiday rather than after it.

Officer Fasan requested Martin and Lopez's consent to search the minivan in light of his much-aroused suspicion.  Both defendants granted oral consent to search the minivan.  The investigatory stop had been in progress for less than five

3

minutes at the time Officer Fasan solicited consent.  Neither he nor Officer

Kochanny had drawn their weapons, and all questioning occurred in normal,

conversational tones.  Officer Fasan placed the three individuals in the rear of his

police cruiser while Officer Kochanny searched the minivan.  Officer Kochanny

discovered a black brick that he suspected to contain narcotics, at which point the

officers arrested all three individuals.  Police seized a total of ten kilograms of

cocaine from the minivan.

## II.   **Procedural History**

On May 31, 2006, several of Lopez's co-defendants were charged in a three-

count indictment for drug offenses.  (Doc. 11).  A superseding and second

superseding indictment followed.  On September 17, 2008, the grand jury issued an

eight-count third superseding indictment charging Lopez and nine others with

(1) conspiracy to distribute cocaine, crack cocaine, and marijuana, in violation of

21 U.S.C. § 846; (2) distribution of and possession with the intent to distribute

cocaine, in violation of 21 U.S.C. § 841(a)(1); and (3) distribution of and possession

with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).

Jason B. Duncan, Esquire, ("trial counsel") was appointed to represent

Lopez on November 17, 2008.  (Doc. 891).  On January 8, 2009, Martin filed a motion

(Doc. 933) to suppress all physical evidence obtained as a result of the stop on the

ground that the officers lacked probable cause or reasonable suspicion.  Lopez

joined the motion on January 16, 2009.  (Doc. 947).  Defendants further asserted that

they did not consent to the search of the minivan.  Lopez also argued that the

4

evidence should be suppressed as it pertains to him because he exercised no control over the minivan or the cocaine.  The court conducted an evidentiary hearing on February 6, 2009, and denied defendants' motion on April 28, 2009.  (Doc. 1048). The court reasoned that the officers possessed adequate reasonable suspicion to stop defendants pursuant to the Supreme Court's holding in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).  The court also reasoned that the officers did not impermissibly extend the stop and therefore defendants provided valid consent to search the minivan. Finally, the court construed Lopez's control argument as challenging the existence of probable cause for his arrest and rejected it.

In June, 2009, a jury convicted Lopez of (1) conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride, crack cocaine, and marijuana; and (2) distribution of and possession with the intent to distribute cocaine.  The jury acquitted Lopez of distribution of and possession with the intent to distribute marijuana.  (Doc. 1214).  The court eventually sentenced Lopez to 198 months imprisonment.  (Doc. 1635).

Lopez filed a notice of appeal with the Third Circuit on March 2, 2010.  (Doc. 1648).  He appealed this court's denial of his motion to suppress.  The Third Circuit affirmed the court's decision on August 10, 2011.  (Docs. 1746, 1755).  In relevant part, the court reasoned that the officers possessed reasonable suspicion to conduct the initial stop, that Martin and Lopez's consent to search was voluntarily provided, and that Lopez possessed sufficient dominion or control over Martin's vehicle for the officers to have probable cause to arrest.  (Doc. 1755-1).

5

Lopez filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on January 22, 2013. (Doc. 1791). The government filed a brief in opposition on April 16, 2013. (Doc. 1801). On May 20, 2013, Lopez filed the instant motion for appointment of an expert and a request for documents. (Doc. 1805). On June 4, 2013, he filed a motion for extension of time to file a reply brief for his § 2255 motion in order to review the requested documents. (Doc. 1807). Lopez ultimately filed a reply brief (Doc. 1819) on August 6, 2013 prior to the court's disposition of the motion.[3] The motions are fully briefed and ripe for disposition.

## III.   **Legal Standard**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. In general, relief under § 2255 is afforded based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. R. GOVERNING § 2255 CASES 1(a). A district court is not required to hold a hearing when the record conclusively shows that a movant is not entitled to relief. United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008); see also United States v. Thomas, 221 F.3d 430, 437 (3d

---

[3] Thus, the court will deny Lopez's motion (Doc. 1807) for an extension of time to file a reply brief as moot and will exercise its discretion in considering the contents of the reply brief ultimately filed.

Cir. 2000) ("Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See

7

Strickland, 466 U.S. at 694.  The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  Id. at 697.

## IV.   Discussion

Lopez asserts that trial counsel was ineffective for failing to assert that law enforcement officers impermissibly extended the Terry stop of Lopez and that this extension vitiated Lopez's voluntary consent to search.  He further asserts that trial counsel was ineffective for failing to object to the racial composition of the jury venire.  The court will address each issue in turn.

### A.   Unreasonable Seizure

Lopez attempts to use his § 2255 motion to re-litigate his motion to suppress, which this court and the Third Circuit have already determined to be without merit.  See United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition.").  Lopez seems to believe that because the court denied his motion to suppress, his counsel must have provided deficient representation.  Lopez's allegations are unavailing.

Lopez primarily argues that his counsel was ineffective because he did not precisely identify the underlying basis for his argument that Lopez did not exercise dominion or control over the minivan and the contraband seized from inside of it. (Doc. 1791).  The Third Circuit noted that trial counsel could have been arguing that

8

Lopez did not exercise dominion or control over the minivan and the contraband either for: (1) the purpose of disputing a finding of probable cause for his arrest; or for (2) disputing its relevance to him in the context of his overall guilt for the indicted crimes.  (Doc. 1755-1 at 11 n.11).  This court construed trial counsel's argument as disputing probable cause for Lopez's arrest – which is a suppression issue – and disposed of it accordingly.  (Doc. 1048 at 16).

Lopez asserts that, instead, trial counsel should have focused his argument on whether law enforcement officers impermissibly extended the <u>Terry</u> stop of Lopez, and whether this extension vitiated Lopez's voluntary consent to search. (Doc. 1791 at 4).  However, trial counsel raised, and both this court and the Third Circuit disposed of, these issues.[4]  (<u>See</u> Doc. 1048 at 14-16 ("In this matter, Officers Fasan and Kochanny performed a reasonable investigatory detention [after the initial <u>Terry</u> stop], and defendants voluntarily consented to the search."), 1755-1 at 10 (finding that the district court's determination that "Martin and Rogelio both *voluntarily* consented to the search of the minivan" was not clearly erroneous)).

---

[4] It appears that certain aspects of defendants' briefing at the district court level and on appeal raised these issues in relation to Martin and not Lopez.  (<u>See</u> Docs. 1000 ("Further, even if consent was given by Martin Lopez, the prior unlawful actions of the police make any later given consent invalid."), 1755-1 at 10 ("Martin, [Lopez] claims, did not voluntarily consent to the search, and, if he did, that consent was rendered invalid by the prior unlawful actions of the police."). <u>But</u> <u>see</u> Doc. 950 ("In short, after they asked some initial questions Martin and Rogelio Lopez should have been allowed to go about their business.")).  However, both this court and the Third Circuit determined the applicability of the matter as to *both* defendants, thus negating any possible prejudice under <u>Strickland</u>.

None of Lopez's additional legal arguments on this issue affect the court's determination.[5]

In his reply brief, Lopez further alleges that counsel ineffectively argued that the officers lacked reasonable suspicion to perform the initial <u>Terry</u> stop.  (<u>See</u> Doc. 1819).  Whether the officers possessed reasonable suspicion was a key issue of the suppression motion, and Attorney Duncan presented thorough and clear argument on it.  (<u>See</u> Docs. 950 at 4, 1000 at 1-6).  Ultimately, the court found that his arguments were without merit and the Third Circuit affirmed.  (Doc. 1755-1 at 6-10).  None of Lopez's legal arguments on this issue alter or affect the court's determination.  Trial counsel's arguments fell within the wide range of reasonable professional assistance.  The subtle nuances of the relevant issues were not lost on the court.  Thus, Lopez is unable to establish either trial counsel's deficient performance or any prejudice resulting from his representation on the suppression issues.

B.    <u>Fair Cross Section</u>

Lopez also alleges that his counsel was ineffective for failing to object to the composition of the jury pool under the Sixth Amendment to the United States

---

[5] For example, Lopez asserts that his consent was involuntarily provided because at the time he was confined in the back seat of the patrol car.  (Doc. 1791 at 4-7).  This assertion is inaccurate.  The record reflects that Martin and Lopez were still standing in the parking lot when they provided consent to search.  (<u>See</u> Doc. 1048 at 7).

Constitution.[6]  The Sixth Amendment guarantees defendants a trial by a jury

selected from a "fair cross section" of the community.  This right is codified in the

Jury Service Selection Act of 1968, 28 U.S.C. § 1861.  To establish a Sixth

Amendment fair cross section claim, a defendant must establish that (1) the

excluded group is cognizable; (2) the representation of the group in jury venires is

not "fair and reasonable" in relation to the number of such persons in the

community; and (3) the underrepresentation is caused by "systematic exclusion" of

the group during the jury selection process.  Duren v. Missouri, 439 U.S. 357, 364

(1979).  To establish the second prong, a defendant must demonstrate "the

percentage of the community made up of the group alleged to be underrepresented,

for this is the conceptual benchmark for the Sixth Amendment fair-cross-section

requirement."  Duren, 439 U.S. at 364. Analysis of whether the representation of the

group in the jury venire is fair and reasonable in relation to the number of such

persons in the community is, "at least in part, a mathematical exercise, and must be

supported by statistical evidence."  United States v. Weaver, 267 F.3d 231, 240 (3d

Cir. 2001).  Under the third prong, a defendant may demonstrate systematic

----

[6] Lopez cites the Supreme Court decisions of Hernandez v. Texas, 347 U.S. 475 (1954) and Hoyt v. Florida, 368 U.S. 57 (1961), *overruled by* Taylor v. Louisiana, 419 U.S. 522 (1975), which addressed challenges to jury pool composition under the Fourteenth Amendment Equal Protection Clause.  (Doc. 1819 at 14).  However, Lopez focuses his arguments principally on an alleged violation of his Sixth Amendment right to a jury selected from a fair cross section of the community. Hence, the court concludes that Lopez challenges the composition of the jury only under the Sixth Amendment and not under the Fourteenth Amendment Equal Protection Clause.

exclusion in a jurisdiction's use of voter registration lists "if the use of voter registration lists over time [had] the effect of sizeably underrepresenting a particular class or group on the jury venire." Id. at 244-45.

Lopez alleges that his counsel should have argued that the Middle District's use of the voter registration system to compose the jury pool systematically excludes blacks and Hispanics.  In support of his argument, Lopez provides census information for some of the counties and boroughs within the Middle District.[7] After the filing of his initial motion (Doc. 1791) and the government's response (Doc. 1801), Lopez filed a motion requesting the court to obtain a demographic expert to assist him in researching his fair cross section challenge.  (Doc. 1805).  Lopez further requests the court to provide him with jury statistics compiled by the court from early 2008 to 2012 as well as copies of the master jury wheel that was used to compose the jury for his trial.  (Id.)

Under Rule 6(a) of the Rules Governing § 2255 Proceedings, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  Additionally, the movant must "provide reasons for the request" and "specify any requested documents."  Id.  The movant shows "good cause" if he

---

[7] Lopez provides census information for the following counties: Adams, Cumberland, Dauphin, Franklin, Fulton, Juniata, Lebanon, Mifflin, Perry, and York.  Lopez also provides census information for the following boroughs or cities: Hanover, Harrisburg, Lewistown, New Cumberland, and Palmyra.  (See Doc. 1791, Ex. B; Doc. 1819).  Lopez does not provide census information for Huntingdon county.

makes "specific allegations before the court [that] show reason to believe that the petitioner may, if the facts are fully developed," be entitled to relief.  Bracy v. Gramley, 520 U.S. 899, 908-909 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)).[8]

Lopez is not entitled to the requested documents, a demographic expert, or relief in his favor because, regardless of the merits of the underlying fair cross section issue, he only makes conclusory allegations concerning the Strickland factors.  Lopez does not demonstrate, nor even discuss, how trial counsel's representation fell below an objective standard of reasonableness based on the facts before counsel at the time of jury selection.  See Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("[t]here must be some evidence of irregularity in jury selection practices before failure to object to the panel rises to the level of ineffective assistance of counsel.") (internal citation omitted).  Indeed, Lopez does not even allege that trial counsel was aware of Lopez's concerns.  Even if trial counsel was aware, "[r]easonable and effective assistance of counsel does not require an attorney to sift through voluminous jury records every time his client requests that he challenge the array as unconstitutionally drawn."  Id.

More importantly, Lopez fails to make any argument concerning how the outcome of his trial would have been any different had trial counsel made a fair

---

[8] Bracy addressed a motion under R. GOVERNING § 2254 CASES 6(a), but the two rules are substantively identical.  See R. GOVERNING § 2255 CASES 6(a) advisory committee's note.

cross section challenge.  The census information submitted by Lopez shows that,

even if the representation of African-Americans and Hispanics in the jury venire

was perfectly proportional to the number of such persons in the community, Lopez

still likely would have been tried by an all-white jury.  (See Doc. 1791, Ex. B).

Moreover, it defies credulity to believe that a reasonable jury of any racial or ethnic

composition would have acquitted Lopez based on the overwhelming evidence

introduced against him at trial.  See Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir.

1998) ("[W]e reject Thomas' claim of prejudice because the evidence, both

testimonial and physical, against Thomas was so overwhelming that it is hard to

believe that any reasonable juror, black or white, would have voted to acquit him.");

Pugliano v. United States, Crim. A. No. 95-1171, 2005 WL 3478360 (D. Conn. Dec. 19,

2005) ("If the petitioners' fair cross-section claim had been made prior to trial and

had been successful, the case would have been transferred to either the New Haven

or Bridgeport division for trial.  And, based on the overwhelming evidence of the

petitioners' guilt, the verdicts would not have been different if the case had been

tried in another seat of court in this District."); United States v. Davis, 939 F. Supp.

810, 817 (D. Kan. 1996) (Rejecting defendant's prejudice argument because "[t]he

evidence presented at trial against defendant, aside from that which defendant

alleges was wrongfully admitted, was overwhelming.").

Specifically, over the course of an approximately two week trial, the

government introduced substantial evidence of Lopez's involvement in the

distribution of large amounts of illegal narcotics throughout the United States.  This

14

evidence came in the form of testimony from cooperating co-defendant Amauris

Sanchez ("Sanchez"), who ran a drug trafficking organization in central

Pennsylvania; testimony from Officers Fasan and Kochanny concerning the

May 26, 2008, car-switch drug transaction involving Lopez; evidence of recorded

conversations between Lopez and Sanchez; and Western Union records of money

transfers stemming from illegal drug transactions involving Lopez.  In light of this

substantial evidence, Lopez cannot establish prejudice under <u>Strickland</u>.

The record affirmatively indicates that both of Lopez's ineffective assistance

of counsel claims are without merit.  Thus, additional discovery, a demographic

expert, and a hearing are not necessary.

## V.      Conclusion

For the foregoing reasons, the court will deny Lopez's motion to vacate (Doc.

1791).  The court will also deny Lopez's request (Doc. 1805) for an expert and

discovery.  The court will further deny Lopez's motion (Doc. 1807) for an extension

of time to file a reply brief as moot.  An appropriate order follows.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:       March 3, 2014